HEATHMOUNT A.E. CORP., Plaintiff,

v.

TECHNODOME.COM, an Internet domain name, and Destinationtechnodome.Com, an Internet domain name, Defendants.

No. CA–00–00714–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 24, 2000.

Jordan S. Weinstein, Oblon, Spivak, McClelland, Maier & Neustadt, PC, Arlington, for plaintiff.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This case provides one of the first opportunities for a court to apply the *in rem* proceeding established by Congress as part of the Anti–Cybersquatting Consumer Protection Act ("the ACPA"), 15 U.S.C. § 1125(d)(2) (West Supp.2000). The Court is faced with two important questions. Of particular importance to the ACPA, this Court must determine the nature of a plaintiff's burden to prove the "absence" of personal jurisdiction in order to proceed *in*

*rem.* Of importance to Internet law generally, the Court must determine whether, under Virginia law, the registration of an Internet domain name with a registrar located in Virginia is a sufficient minimum contact, of its own force, to confer personal jurisdiction over the registrant.

Before the Court are Plaintiff's Motion for an Order Pursuant to 28 U.S.C. § 1655 and Rule 4(n) to Appear or Plead and Plaintiff's Motion to Deposit Domain Names in Registry of the Court. For the reasons set forth below, the Court finds that the Plaintiff has met its burden of proof and that personal jurisdiction is lacking. As such, the Court will **GRANT** both of Plaintiff's motions.

### I. Background

On April 28, 2000, Plaintiff, Heathmount A.E. Corporation, filed an *in rem* action with this Court, alleging cyberpiracy, in violation of the ACPA. Plaintiff is a Canadian corporation, operating as an entertainment company and currently developing projects in Montreal, Quebec, and Queens, New York, that uses the marks "TECHNODOME" and "DESTINATION: TECHNODOME." Defendants are two Internet domain names, <TECHNODOME.COM> and <DESTINATION-TECHNODOME.COM>, which were registered with Network Solutions, Inc. ("NSI"), located in Herndon, Virginia.[1]

Plaintiff claims that it has used its marks in the marketing, advertising, and distribution of related goods, promotional items and services, since 1997. Plaintiff further alleges that on June 2, 1998, the Defendant domain names were registered by Elliot Salmons, a resident of Ontario, Canada, which is an area where Plaintiff's projects have been well-publicized. These domain names, Plaintiff contends, were registered "in bad faith in an attempt to profit from use of Plaintiff's marks either

---

1. NSI registers, and acts as the wholesaler to other domain name registrars, of several of the most common "top-level" Internet domains: e.g., <.com>, <.net>, <.gov> and <.org>. Registration of a domain name with NSI can be completed online through NSI's interactive website, with the final registration agreement being executed via electronic message ("email").

to extort money from Heathmount or for sale to potential users which wish to take advantage of Heathmount's trademarks." (Complaint ¶ 15.)

Plaintiff now seeks an Order requiring the registrant of the Defendant domain names to appear or plead within twenty (20) days of personal service or be adjudged in default. In addition, Plaintiff seeks an Order commanding NSI to deposit the Defendant domain names into the registry of the Court for final disposition, pursuant to the Court's adjudication of the pending Complaint.

## II. Analysis

Title 15, U.S.C. § 1125(d) provides for two types of proceedings by which a plaintiff may challenge the registration of a domain name. Section 1125(d)(1) creates a federal cause of action by the owner of a mark, against the registrant of a domain name, where the challenged domain name was obtained in bad faith and will cause consumer confusion or dilution to the owner's mark. Personal jurisdiction over the current owner of the domain name is required to maintain such an action.

Section 1125(d)(2) permits the owner of a mark to file an *in rem* proceeding against the domain name itself, if the domain name "violates any right of the owner of a mark registered with the Patent and Trademark Office or protected under subsection (a) and (c)" of § 1125. To proceed under the *in rem* statute, personal jurisdiction is not necessary. In fact, a plaintiff must: (I) be unable to obtain personal jurisdiction over the current owner of the domain name, *or* (II) through due diligence be unable to find a person who could be a defendant under § 1125(d)(1).

Plaintiff has filed its Complaint *in rem,* pursuant to subpart (I), 15 U.S.C. § 1125(d)(2)(A)(ii)(I), alleging that personal jurisdiction cannot be obtained over Salmons. Before proceeding to the merits of the pending motion, the Court must determine whether Plaintiff has met the requirements of subpart (I) and the remainder of § 1125(d)(2).[2]

## A. Jurisdictional Requirements of Subpart (I)

### 1) Plaintiff's Burden of Proof

■ The determination of the existence or absence of personal jurisdiction under subpart (I) of the *in rem* statute places the Plaintiff and the Court in an awkward relationship. In an *in personam* proceeding, a plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993) (citation omitted); *Roche v. Worldwide Media, Inc.,* 90 F.Supp.2d 714, 716 (E.D.Va.2000) (citations omitted). In such cases, a court will construe all relevant allegations in the light most favorable to the Plaintiff and draw inferences in favor of jurisdiction. *Mylan,* 2 F.3d at 60 (citations omitted); *Roche,* 90 F.Supp.2d at 716 (citation omitted).

Subpart (I) of the *in rem* statute turns this analysis on its head. Under § 1125(d)(2), a plaintiff must "disprove" the presence of personal jurisdiction in order to proceed *in rem.* If the Court were to rely on the general rule for assessing personal jurisdiction, Plaintiff would bear the burden of proving the "absence" of personal jurisdiction by a preponderance of the evidence. While such a burden may not be difficult to conceptualize, it is difficult to apply—requiring the plaintiff to "prove a negative." *See, e.g. U.S. v. Swiss American Bank, Ltd.,* 191 F.3d 30, 40 (1st Cir.1999) (discussing difficulty of proving negation requirement under Federal Rule 4(k)(2)).

In some circumstances, the interplay between the *in personam* and *in rem* subsec-

---

**2.** An *in rem* proceeding may be filed in the judicial district in which the domain name was registered. 15 U.S.C. § 1125(d)(2)(A). In this case, the Defendant domain names were registered with NSI, a company located in Herndon, Virginia. Herndon is located in the Eastern District of Virginia. Thus, venue is proper.

tions of § 1125(d) will create a disincentive for plaintiffs to cull information that might establish the presence of personal jurisdiction. The origin of this disincentive is manifest. In many cybersquatting cases, the plaintiff will not desire relief in the form of damages. Quite often, the plaintiff will seek only to rend an infringing or dilutive domain name from its current owner. For such a plaintiff, the *in rem* proceeding is highly preferable to the *in personam* proceeding because the former is likely to be quicker and less costly while equally as effective in terms of fulfilling the plaintiff's objectives.

The preference for a quick and relatively inexpensive disposition may lead some plaintiffs to conclude too quickly that personal jurisdiction is lacking. As such, the Court finds that a plaintiff's burden to prove the "absence" of personal jurisdiction in subpart (I) cases should mirror the burden imposed on plaintiffs proceeding under subpart (II).[3]

In other words, once the domain name registrant or its current owner has been identified, subpart (II) is rendered inapposite. Subpart (I) necessarily controls. The plaintiff shall then bear the burden to demonstrate some indicia of due diligence in trying to establish personal jurisdiction over an individual who has been identified as a potential defendant but is not subject to jurisdiction. *Cf. Swiss American Bank,* 191 F.3d at 40 (applying similar standard in Federal Rule of Evidence 4(k)(2) cases). If the court is satisfied with the plaintiff's efforts and concludes that the evidence presented establishes that personal jurisdiction is lacking, then the subpart (I) cause of action may proceed.[4] This determination will, of necessity, be fact driven.

In this case, Plaintiff claims that it cannot obtain personal jurisdiction over the registrant and current owner of the Defendant domain names, Elliott Salmons. Salmons is a Canadian resident. Plaintiff asserts that, as far as it can ascertain, Salmons' only contact with the United States was his registration of the Defendant domain names with NSI. Plaintiff has contacted Salmons on several occasions in an attempt to gather information and resolve this dispute. In addition, Plaintiff earlier attempted to obtain relief under the Rules of Uniform Domain Name Dispute Resolution Policy, in a proceeding before the Internet Corporation for Assigned Names and Numbers ("ICANN"). Plaintiffs state that, in the ICANN proceeding, Salmons denied being subject to personal jurisdiction in Virginia or in the Eastern District of Virginia. Salmons argued that, although Virginia law governs the registration agreement with NSI, he did not consent to jurisdiction in a Virginia state or federal court.[5] (Plaintiff's Facsimile Transmission of June 7, 2000 ¶ 12.)

Based on these facts, the Court finds that Plaintiff has exercised the requisite due diligence in attempting to uncover information about Salmons, upon which this Court might base personal jurisdiction. It remains to determine whether, based on the information presented by the Plaintiff, this Court lacks personal jurisdiction over Salmons.

## 2) Personal Jurisdiction

As stated at the outset of this memorandum opinion, the key question presented in this matter is whether, under

---

**3.** Subpart (II) requires that a plaintiff prove that he has exercised due diligence in attempting to identify an individual who might be a defendant under § 1125(d)(1).

**4.** If the court concludes that Plaintiff's efforts to establish personal jurisdiction were lacking, it may require Plaintiff to make additional efforts before proceeding *in rem*. If the court concludes that personal jurisdiction can

be exercised, either in that court or in another forum, then the *in rem* complaint shall be dismissed.

**5.** Plaintiff has explained further that the most recent version of NSI's registration agreement now includes a jurisdictional waiver. However, the registration agreement between Salmons and NSI did not contain such a waiver.

Virginia law, the registration of a domain name, without more, can satisfy the requirements of due process and justify this Court's exertion of personal jurisdiction over Salmons.[6]

Under Virginia law, personal jurisdiction may be exercised if: (1) the particular facts and circumstances of the case fall within the reach of Virginia's long-arm statute, Va.Code Ann. § 8.01–328.1(A); and (2) the exercise of personal jurisdiction satisfies due process. *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971). The only section of the long-arm statute even arguably applicable on the facts of this case is § 8.01–328(A)(1). Subsection (A)(1) operates as a "single-act" statute, which means that it may be satisfied by a single act of transacting business in the Commonwealth. *Id.* As a practical consequence of this broad language, "transacting business," subsection (A)(1) has been construed to extend personal jurisdiction to the fullest extent permitted by due process. *Id. See also United States v. Pierre Point Shipping & Inv. Co.,* 655 F.Supp. 1379 (E.D.Va.1987); *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391 (E.D.Va.1984); *Williams Crane & Rigging, Inc. v. B & L Sys.,* 466 F.Supp. 956 (E.D.Va.1979).

### (a) Transacting Business in Virginia

As stated, a single act of transacting business will satisfy the subsection (A)(1) and the putative defendant need not be physically present in Virginia to trigger the long-arm statute. *See English & Smith v. Metzger,* 901 F.2d 36, 38–39 (4th Cir.1990). Moreover, subsection (A)(1) may be satisfied by the establishment of an ongoing relationship between the putative defendant and a Virginia business. *Id.* at 39.

The Court has reservations that the registration of a domain name over the Internet with a Virginia-based registrar constitutes "transacting business." Indeed, Salmons' registration of the Defendant domain names did involve a business located in Virginia: the registration was transacted through an Internet website operated by NSI out of its Herndon, Virginia location. However, Salmons' brief interaction with NSI's website seems to stretch the scope of the subsection (A)(1) beyond any manageable limit. Given the fact that the scope of the "transacting business" requirement cannot exceed the limits of due process, the Court's subsection (A)(1) determination will turn on the Court's due process analysis. *See Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 534, 238 S.E.2d 800, 801–02 (1977). As such, the Court need only note its concerns on this issue and then move on to consider whether personal jurisdiction in this case can satisfy the requirements of due process.

### (b) Due Process

The due process clause protects a defendant's liberty interest in not being subject-

6. To satisfy the absence of personal jurisdiction requirement of subpart (I), this Court concludes that a court must assess whether personal jurisdiction exists in the forum state and also whether personal jurisdiction exists in any other states. The latter part of the Court's inquiry is resolved with relative ease in this case. Based on the information about Salmons presented by Plaintiffs, the Court concludes that the only other state in which Salmons might be subject to personal jurisdiction is New York.

Personal jurisdiction would be lacking in New York. New York's long-arm statute extends personal jurisdiction over individuals outside of the state of New York under specific circumstances. *See* N.Y. CPLR Law § 302(a). The Court finds that none of these circumstances exists in this case: there is no evidence that Salmons has transacted business in New York state, § 302(a)(1); there is no evidence that Salmons' alleged request for money in exchange for surrendering the Defendant domain names took place in New York state, § 302(a)(2); there is no evidence that Salmons regularly conducts business in New York or derived substantial revenues from his conduct in this case, § 302(a)(3); and there is no evidence that Salmons controls any property in New York state.

Based on the facts presented by the Plaintiff, it does not appear that Plaintiff would be able to obtain personal jurisdiction over Salmons in New York.

ed to the binding judgment of a forum unless he has certain "minimum contacts" within the territory of the forum. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In assessing the sufficiency of a defendant's contacts with the forum state, a court must consider whether asserting personal jurisdiction is consistent with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). These nebulous concepts require further elucidation before the Court may apply them to the facts of this case.

Personal jurisdiction is categorized in two ways: specific and general. Specific personal jurisdiction is exercised where the matter before the court arises out of or relates to the nonresident defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, SA v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General personal jurisdiction is exercised where the matter is not one arising out of or related to the nonresident defendant's contacts with the forum. *Id.* at 415 n. 9, 104 S.Ct. 1868. The former may be based on less significant contacts, while the latter requires more substantial contacts. In this case, personal jurisdiction would be specific because Plaintiff's claim relates to Salmons' contacts with Virginia: the domain name registration with NSI.

■ To satisfy due process in the exercise of specific personal jurisdiction, the nature and quality of the nonresident defendant's contacts with the forum must be significant in relation to the specific cause of action. This requires a showing that the defendant purposefully directed his activities at residents of the forum thereby availing himself of the privilege of conducting activities therein and invoking the benefits and protections of the forum's laws.

*Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (citations omitted).

As a corollary to this "purposeful availment" requirement, courts consider whether the putative nonresident defendant could reasonably have anticipated being haled into court in the forum state. *Id.* at 474, 105 S.Ct. 2174 (citation omitted). These requirements protect a defendant from being subjected to personal jurisdiction as a result of fortuitous, attenuated or random contacts, or as a result of the unilateral activity of another party. *Id.* at 475, 105 S.Ct. 2174 (citations omitted). As stated, however, personal jurisdiction cannot be defeated simply because the nonresident defendant did not enter the state. *See id.* at 476, 105 S.Ct. 2174.

Courts in the Eastern District of Virginia have reached seemingly conflicting conclusions on the issue of personal jurisdiction based solely on domain name registration. In *Lucent Technologies, Inc. v. Lucentsucks.Com,* 95 F.Supp.2d 528 (E.D.Va.2000), the court stated that the exercise of personal jurisdiction in a Virginia court would be proper based solely on the registration of a domain name with NSI. *Id.* at 532 n. 5. However, the *Lucent* court was not called upon to make a finding of law with respect to subpart (I) or the presence of personal jurisdiction. The plaintiff in that case had proceeded under subpart (II) and the court found that due diligence was lacking. *Id.* at 536. As such, the court's finding is dicta.

In *America Online, Inc. et al. v. Chih–Hsien Huang, et al.,* 55 U.S.P.Q.2d 1560, 2000 WL 991587 (E.D.Va.2000) (Ellis, J.), the issue of personal jurisdiction based on a domain name registration was squarely before the court. In that case, the court dismissed the plaintiffs' case for lack of personal jurisdiction, finding that personal jurisdiction could not be based solely on the registration of a domain name with NSI. *Id.* 2000 WL 991587 at *6, *8.

This Court is inclined to follow the reasoning of the *America Online* court. There exists a line of cases suggesting that

personal jurisdiction is lacking in this case. In *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998) (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997)), the court held that the mere registration of a domain name is insufficient to establish personal jurisdiction over a domain name registrant domiciled in one state to the jurisdiction of another. In the main, district courts considering this question have cited to and followed that holding, requiring that personal jurisdiction be based on "something more" to demonstrate that the registrant has directed his activities toward the forum state. *See, e.g., Sports Authority Michigan, Inc. v. Justballs, Inc.,* 2000 WL 707943, at *5 (E.D.Mich. May 30, 2000); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 836 (N.D.Ill. 2000); *Perry v. RightOn.com,* 90 F.Supp.2d 1138, 1140 (D.Or.2000); *Cello Holdings, LLC, et al. v. Lawrence–Dahl Companies;* 89 F.Supp.2d 464, 471 (S.D.N.Y.2000); *Ty Inc. v. Clark,* 2000 WL 51816, *4 n. 2 (N.D.Ill. Jan.14, 2000); *Rothschild Berry Farm v. Serendipity Group, LLC,* 84 F.Supp.2d 904, 910 (S.D.Oh.1999); *Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 730 (E.D.Pa. 1999); *PurCo Fleet Services, Inc. v. Towers,* 38 F.Supp.2d 1320, 1324 (D.Utah 1999); *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 921 (D.Or.1999).

The location of the registrar within the forum state could be construed as constituting "something more," thereby triggering specific personal jurisdiction in this case. The present case, *Lucent* and *America Online,* are distinguishable from *Panavision* on that fact. For example, in the present case, the Defendant domain names were registered with a registrar located in the forum state, Virginia, a state that adheres to the single-act rule. In *Panavision,* for example, the plaintiff filed an action in a California court but the domain names were registered in Virginia with NSI. 141 F.3d at 1319. Indeed, this distinction could form the basis of a finding of specific personal jurisdiction over Salmons without repudiating *Panavision* and its progeny. However, this Court is persuaded by the *America Online* court's analysis and finds that this additional fact is not sufficient to square the exercise of personal jurisdiction in this case with the limits of due process.

Salmons did not purposefully direct his activities to Virginia when he registered the Defendant domain names. The act of registration required only that Salmons visit NSI's website from his computer, located in Canada. In general, the entire process of registration is relatively brief, involving the submission of limited personal and credit card information and an exchange of emails to finalize the agreement.

NSI's website does not indicate that it is located in Virginia or even that NSI is a Virginia business. Because of the limited number of domain name registrars, Salmons' choice to register the Defendant domain names through NSI provides inconclusive evidence that he chose to register with NSI because it is a Virginia business. As such, there is no evidence that Salmons knew that NSI was located in Virginia, let alone that he was purposefully directing his activities to the Commonwealth.[7] *See America Online,* 2000 WL 991587 at *6.

Although the registration of the Defendant domain names created a contractual relationship between Salmons and NSI, that alone does not constitute a sufficient minimum contact. *See Ellicott Machine Corp. v. John Holland Party Ltd.,* 995 F.2d 474, 478 (4th Cir.1993). Courts must look to the prior negotiations and future consequences of the contract as well as its

---

7. The registration agreement Salmons executed with NSI does contain a choice of law clause setting forth that Virginia law governs the agreement. However, this fact alone cannot establish that Salmons purposefully availed himself of the privilege of conducting activities in Virginia and invoking the benefits and protections of its laws. *See America Online,* 2000 WL 991587 at *6 n. 26.

terms and the parties' course of dealing. *See Burger King*, 471 U.S. at 479–80, 105 S.Ct. 2174. In this case, there were no prior negotiations because NSI's registration agreement is a standard form agreement. The future consequences of the agreement were minimal, requiring only that Salmons make payments in the future to maintain his registration. This "created no ongoing relationship of substance, any more than a magazine subscription creates an ongoing relationship between the publisher and subscriber." *See America Online*, 2000 WL 991587 at *6.

Moreover, the services provided by NSI pursuant to the registration agreement do not establish a sufficient relationship between Salmons and Virginia to justify personal jurisdiction. There is no evidence that the Defendant domain names are hosted ("parked") on NSI's servers in Virginia. As such, the most that can be inferred from the evidence presented is that NSI's services consist simply of maintaining a record of the Defendant domain names in its databases. *See Network Solutions, Inc. v. Umbro Int'l, Inc.*, —— Va. ——, 529 S.E.2d 80, 85 (2000). In the absence of proof that the Defendant domain names are parked on NSI's servers, such ministerial services alone cannot trigger personal jurisdiction.

Even in the aggregate, all of these considerations fail to establish sufficient minimum contacts with the forum state. In short, Salmons did not purposefully direct his activities to Virginia or purposefully avail himself of the benefits of its laws. The Court has serious doubts that traditional notions of fair play and substantial justice could support personal jurisdiction in this case. Such an expansive exercise of judicial power would push the outer limits of due process beyond the breaking point.

Moreover, the legislative history of the *in rem* statute suggests that Congress anticipated that the law on this issue would follow the direction of this Court's and the *America Online* court's findings. There are two situations in which subpart (I) comes into play: first, where the registrant of the domain name is not subject to personal jurisdiction in any U.S. court and, second, where a domain name registrant has transferred ownership of the domain name to another individual who is not subject to personal jurisdiction. A review of the congressional reports shows that Congress added subpart (I) out of a concern for the former situation without any mention the latter. The congressional reports refer specifically to unreachable "domain name registrants" in their explanation of and support for the amendment. *See, e.g.*, 145 Cong. Rec. S14986–03, at *S15026 (daily ed. Nov. 19, 1999); H.R. Conf. Rep. No. 106–464 (November 9, 1999); H.R.Rep. No. 106–412 (October 25, 1999). In light of the growing judicial support for the *Panavision* holding, occurring coterminously with the passage of the ACPA, and given Congress' focus on domain name registrants, this Court concludes that Congress intended subpart (I) to reach domain names owned by individuals whose only contact with the forum state is the registration of the defendant domain name.

It seems highly unlikely that Congress thought that the registration of a domain name was, of its own force, sufficient to establish personal jurisdiction over the domain name registrant in the state where the registrar is located. Such a view would severely limit the intended scope of subpart (I) because, as long as the domain name registrant was amenable to process, a § 1125(d)(1) civil action would lie thereby obviating the need for an *in rem* proceeding. *See Omni Capital Intern., Ltd. v. Rudolf Wolff and Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (discussing requirement of amenability to process as prerequisite to personal jurisdiction over foreign defendants). International service of process continues to expand pursuant to agreements between the United States and foreign countries. *See* David Epstein, *Service of Process on Foreign Defendants*, 624 PLI/Lit 33, 45 (February 20, 2000) (stating that 44 nations are

signatories to such agreements and that the number is increasing). Thus, subpart (I) would reach only residents of foreign countries with which the United States has no international service agreement.

■ There is no indication that Congress enacted subpart (I) to accomplish this limited and ever-diminishing objective. In fact, early versions of the amendment did not even include subpart (I). The original draft contained only subpart (II). *See* S.Rep. No. 106–140 (August 5, 1999). Rather, Congress inserted subpart (I) to address what was considered to be an increasingly familiar problem involving foreign-resident cybersquatters. *See* H.R.Rep. No. 106–412 (October 25, 1999). Thus, the Court finds that subpart (I) was intended to apply to all domain name registrants whose only contact with the United States is a registration agreement with NSI or other domain name registrar.

Given the forgoing, the Court concludes that Plaintiff has satisfied its burden of proving that personal jurisdiction over Salmons is lacking. Plaintiffs may proceed *in rem* under subpart (I) of § 1125(d)(2) and the Court may consider the merits of the two pending motions.

## B. Pending Motions

### 1) Motion for an Order Pursuant to 28 U.S.C. § 1655 and Rule 4(n) of the Rules of Civil Procedure to Appear or Plead

■ In an attempt to expedite the process for adjudicating its claim under subpart (I) of § 1125(d)(2), Plaintiff seeks an Order requiring Salmons to appear or plead within 20 days of service or to be adjudged in default. (Plf's Brief Mot. Appear or Plead at 1–2.)

Rule 4(n) states: "If a statute of the United States so provides, the court may assert jurisdiction over property. Notice to claimants of the property shall be sent in the manner provided by the statute or by service of a summons under this rule." Section 1125(d)(2) asserts jurisdiction over property but does not set forth a method of serving identified domain name registrants. Therefore, service must be executed pursuant to Rule 4.

Rule 4(f) permits service on foreign individuals "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Salmons is a resident of Ontario, Canada. Canada is a signatory to the Hague Convention. *See Ackermann v. Levine,* 788 F.2d 830, 839 (2d Cir.1986); *Riendeau v. St. Lawrence & Atlantic R.R. Co.,* 167 F.R.D. 26, 29 (D.Vt.1996). The normal procedure in Canada is for service to be performed by "judicial officers" within the province. *Riendeau,* 167 F.R.D. at 29. Service of process may be executed by personal service on the individual. *See* Ontario R. Civ. P. 16.02(1)(a).

Plaintiff proposes to personally serve Salmons with notice pursuant to the pending motion. Plaintiff requests that Salmons be given 20 days to appear or plead. (Plf's Brief Mot. Appear or Plead at 5.) In support of its timing request, Plaintiff points to 28 U.S.C. § 1655, which states that, in an *in rem* proceeding: "where any defendant can not be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain." Plaintiff assert that 20 days is a reasonable amount of time, insofar as it corresponds with the time permitted to answer to personal service under ordinary circumstances in a civil action. *See* Fed.R.Civ.P. 12(a)(1)(A).

The Court finds that 20 days is a reasonable amount of time to permit Salmons to appear or plead and that the requested action comports with both the letter and spirit of the ACPA. Moreover, the requested action will permit any oversight in the Court's analysis of personal jurisdiction to be cured by Salmons—should he choose to do so—upon receiving notice of the pending action. As such, Plaintiff's Motion for

an Order Pursuant to 28 U.S.C. § 1655 and Rule 4(n) to Appear or Plead is **GRANTED.**

### 2) Plaintiff's Motion to Deposit Domain Names in Registry of the Court

Plaintiff next requests an Order commanding NSI to deposit the Defendant domain names in the registry of the Court. Depositing a domain name in the registry of the court is a matter of course following "receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court." § 1125(d)(2)(D)(i)(I). Plaintiff has satisfied this requirement. As such, the Court will **GRANT** Plaintiff's Motion to Deposit Domain Names in Registry of the Court.

### III. Conclusion

For the foregoing reasons, Plaintiff's motions are **GRANTED.** An appropriate Order will issue.