**CAESARS WORLD, INC., Plaintiff,**

v.

**CAESARS–PALACE.COM,
et al., Defendants.**

No. Civ.A. 99–550–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 25, 2000.

John E. Daniel, Peter A. Abruzzese, Nicholas L. Coch, Eric Roman, Kramer Levin Naftalis & Frankel LLP, New York City, John F. Anderson, Richards McGettigan Reilly & West P.C., Alexandria, VA, for plaintiff Caesars World.

Paul Michael DeCicco, Law Offices of Paul Michael DeCicco, San Diego, CA, Darren J. Quinn, Law Offices of Darren J. Quinn, San Diego, CA, James W. Pravel, Pravel Intellectual Property Law, P.C, Alexandria, VA, for defendant Caesarcasino.com.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is the June 27, 2000 Report and Recommendation ("Report") by a magistrate judge recommending that plaintiff Caesars World, Inc.'s Motion for a Finding of Contempt and for Sanctions Against Caesarcasino.com be granted, and that sanctions be entered against defendant and its attorneys, as well as default judgment against Caesarcasino.com in favor of plaintiff. Caesars World, Inc. ("Caesar's World") and defendant Caesarcasino.com have timely filed objections to the Report and Recommendation. On August 11, 2000, we heard oral argument on the objections and ordered that a ruling on the Report be held in abeyance, pending an eleven day opportunity during which defendant and its lawyers could file a new answer and discovery responses. Below is a further clarification of the rationale behind our August 11, 2000 Order.

## I. PROCEDURAL BACKGROUND

On April 19, 1999, plaintiff Caesars World filed a complaint in this court alleging trademark violations against numerous Internet domain names, including defendant Caesarcasino.com. With leave of court, plaintiff amended its complaint on January 7, 2000, to include claims under

the newly-enacted Anti–Cybersquatting Consumer Protection Act ("ACPA"). 15 U.S.C. § 1125. On March 23, 2000, attorneys James W. Pravel, as local counsel, and Paul Michael DeCicco and Darren J. Quinn, filed Caesarcasino.com's Answer to Plaintiff's Second Amended Complaint.

On May 15, 2000, plaintiff filed a Motion to Compel Defendants to Provide Full and Complete Discovery Responses to the Interrogatories, Requests for Production of Documents and Requests for Admissions Served on March 31, 2000. Magistrate Judge Buchanan entered an Order on May 19, 2000 granting the Motion to Compel. Immediately thereafter, Caesarcasino.com filed three motions: a Motion for Clarification of the May 19, 2000 Order, Objections to the May 19, 2000 Order, and a Motion for Stay of the Discovery Order Pending Ruling on the Two Other Motions. Judge Bryan denied all three motions by Order of June 2, 2000, and directed that "discovery shall be furnished forthwith."

On June 14, 2000, Caesarcasino.com mailed its discovery responses to plaintiff. On June 15, 2000, plaintiff filed the motion at issue, seeking a finding of contempt and for sanctions against Caesarcasino.com. After the issues were briefed by plaintiff and Caesarcasino.com, the magistrate judge filed the Report we now review *de novo*. She found that defendant's counsel had played a "cat and mouse game" by refusing to identify the "sponsor of the litigation." In addition, she found that the June 14, 2000 discovery responses were merely unsigned, unsworn refusals to provide discovery by the "sponsor," and she concluded that Caesarcasino.com had willfully failed to comply with two court orders to respond to discovery. The Report recommended that sanctions are warranted jointly and severally against defendant's counsel and their "sponsor".

## II. DISCUSSION

The essence of Caesarcasino.com's objections to plaintiff's discovery requests is that Caesarcasino.com, as a domain name, cannot be subject to discovery as a person or entity would be. For purposes of its discovery requests, plaintiff defined Caesarcasino.com as: "Caesarcasino.com as well as the registrant of Caesarcasino.com and any person having any ownership interest or control over Caesarcasino.com, including without limitation, NIC Holdings, Ltd." (Mot. to Compel Ex. 10 at 1, ¶ a; *Id.* Ex. 11 at 1, ¶ a; *Id.* Ex. 12 at 2, ¶ a.) Defendant's response to each interrogatory, request for admission and document request, after the two Court orders, was: "No response to plaintiff's discovery has been or will be made by the sponsor of the litigation for defendant Internet domain name Caesarcasino.com." (Report at 3.)

Counsel for Caesarcasino.com maintains that if plaintiff wished to obtain discovery from the "sponsor of the litigation," such as the registrant of the domain name, it had to use third-party discovery devices. The magistrate judge rejected that argument:

> Someone or something (the "sponsor"), asserting the right or duty to speak on behalf of the domain name, voluntarily hired counsel and filed an answer in this Court on behalf of Caesarcasino.com, presumably to preserve or claim rights to that Internet domain name. He/ she/ it may not have that right without being subject to discovery.

(Report at 3–4.)

Because the ACPA is a relatively new statute, employing unfamiliar concepts of *in rem* jurisdiction, the confusion underlying this dispute is understandable. Although counsel on both sides concede that the defendant in this action is a domain name, Caesarcasino.com, it is also undeniable that a person or entity hired counsel to file an answer and various pleadings on behalf of the domain name. The ACPA does not address discovery matters arising from the new causes of action it created, and we therefore find it necessary to re-

view traditional *in rem* jurisprudence to resolve this issue.

Before the ACPA, *in rem* actions were most common in the context of admiralty and civil forfeiture proceedings. *See* Supplemental Rule C(1) (special provisions for actions *in rem* "to enforce any maritime lien" or whenever federal law provides for a maritime action *in rem* or an analogous proceeding); *Double Jeopardy Clause—In Rem Civil Forfeiture,* 110 Harv.L.Rev. 206, n. 1 (1996) (there are over 100 civil forfeiture statutes by which the government can file an *in rem* action against property, and seize it; the burden shifts to the property's owner to prove that the property was not involved in a crime). An *in rem* action, in the strict sense, is taken directly against the property, with the narrow purpose to adjudicate the ownership of that property against the claims of all persons. *See Pennoyer v. Neff,* 95 U.S. 714, 734, 5 Otto 714, 24 L.Ed. 565 (1877).

■ The procedural steps of *in rem* actions in admiralty and civil forfeiture are similar. *See* Matthew P. Harrington, *Rethinking In Rem: The Supreme Court's New (and Misguided) Approach to Civil Forfeiture,* 12 Yale L. & Pol'y Rev. 281, 304–08 (1994) (describing procedures used in drug forfeiture cases). Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims in the Federal Rules for Civil Procedure provides that *in rem* actions begin upon the filing of a verified complaint, describing the property at issue. Fed.R.Civ.P. C(2). This is analogous to the ACPA provisions permitting the filing of an *in rem* action against an allegedly offending domain name as the *res.* 15 U.S.C. § 1125(d)(2); *See Lucent Technologies, Inc. v. Lucentsucks.Com,* 95 F.Supp.2d 528, 535 (E.D.Va.2000) (under the ACPA, a domain name can constitute a *res* for purposes of establishing *in rem* jurisdiction). Next, the property is seized, through an arrest warrant in the admiralty case, Fed.R.Civ.P. C(3), or, in the ACPA case, through a court order directing the domain name registrar to deposit docu-

ments "sufficient to establish the court's control and authority regarding the disposition of the registration and the use of the domain name to the court." 15 U.S.C. § 1125(d)(2)(D)(i). In the admiralty *in rem* action, after notice is given, the rules provide specific guidance as to how claimants of the seized property may come forward to argue their ownership interest in the *res*:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. . . . At the time of answering the claimant shall also serve answers to any interrogatories served with the complaint.

Supplemental Admiralty and Maritime Claims Rule C(6). Although the ACPA has no explicit analogous provisions, we find that the general procedures for *in rem* actions should apply.

■ Applying established *in rem* concepts and procedures to the instant case, the answer should have been filed on behalf of a claimant or claimants seeking to assert their interests in the domain name. Although the *res* is the nominal defendant in an *in rem* action, the purpose of the adjudication is to determine the interests of certain persons to that *res. Shaffer v. Heitner,* 433 U.S. 186, 197, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (citations omitted) ("[T]he phrase 'judicial jurisdiction over a thing' is a customary elliptical way of referring to jurisdiction over the interest of persons in a thing.") Obviously, as an inanimate thing, the domain name could not and did not hire attorneys to file an answer. *See R.M.S. Titanic, Inc. v. Haver,* 171 F.3d 943, 957–58 (4th Cir.1999) ("In rem actions only require that a party seeking an interest in a res bring the res into the custody of the court and provide reasonable, public notice of its intention to enable others to appear in the action to claim an interest in the res"); *Marx v.*

*Guam,* 866 F.2d 294, 297 (9th Cir.1989) ("a 'claimant' in the admiralty practice . . . is a person who assumes the position of a defendant and demands the redelivery to himself of the vessel arrested"). As claimants, the persons or entities filing the answer have reciprocal duties to engage in discovery, just as the claimant in an *in rem* admiralty action must file an answer and respond to any interrogatories served with the complaint within twenty days of filing a claim. Supplemental Rule C(6).

■ The ACPA does not specify a procedure for claimants in an *in rem* action. Moreover, knowledge of analogous *in rem* procedures is not widespread. Therefore, we do not find that counsel was totally unreasonable in their approach to the discovery requests. As they explain in their pleadings, counsel were motivated, at least in part, by a desire not to subject the "sponsors of the litigation" to *in personam* jurisdiction. We have recently addressed that issue and determined that *in personam* jurisdiction cannot be based merely on an appearance in an *in rem* action. *See Harrods Limited v. Sixty Internet Domain Names,* 110 F.Supp.2d 420, 422 (E.D.Va.2000) (citations omitted) (in rem action is brought against an offending res, not its owner, and no personal jurisdiction over the owner of the res is acquired by bringing such an action). Due to this confusion, the Court did not impose sanctions on August 11, 2000, but rather, permitted the "sponsors of the litigation" to come forward as claimants in this case within eleven days, by filing an amended answer or proper claim and complete responses to the outstanding discovery requests. The issue of sanctions was held in abeyance until the eleven days elapsed.

### III.   CONCLUSION

Because an adequate amended answer and discovery responses have been filed, our Order of August 11, 2000, has been satisfied and the Report will be dismissed by an appropriate order.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.