**HARRODS LIMITED, Plaintiff,**

v.

**SIXTY INTERNET DOMAIN NAMES, Defendants.**

**No. Civ.A. 00–262–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 15, 2000.

Geoffrey J. Greeves, Greenberg Traurig, Washington, DC, for plaintiff.

Attison L. Barnes, III, Gardner, Carton & Douglas, Washington, DC, for defendants.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Before the Court is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, raising an unprecedented question as to the pleading requirements for an *in rem* action under the newly enacted Anti–Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125. Because we agree with defendants that bad faith is an element of an *in rem* action under the ACPA, we will grant defendants' motion to the extent that it asks for dismissal of the ACPA count of the complaint. We will dismiss the remaining counts as well because we find that those claims cannot be advanced where personal jurisdiction has not been established.

## I. PROCEDURAL BACKGROUND

Plaintiff, Harrods Limited, is a private company organized under the laws of England and which has operated the Harrods Department Store in London, England, since 1849. The store serves approximately 35,000 customers each day. (Compl. at ¶ 11, 12.) In February 1999, plaintiff launched an Internet site accessible on the World Wide Web at *www.harrods.com*. (*Id.* at ¶ 13.) Later that year, through a licensee, it instituted Harrods Online, which allows consumers in the United States and Canada to purchase Harrods-branded products and other products available at the department store through the Internet. (*Id.* at ¶ 14.) Plaintiff owns twenty-three valid United States Trademark Registrations for the Harrods mark and has two pending United States Trademark Applications. (*Id.* at ¶ 15, 16.) Also pending are two United States Trademark Applications for Harrods Online and Harrods Direct. (*Id.* at ¶ 17, 18.)

In 1912, plaintiff incorporated Harrods South America Limited ("HSAL") under the laws of England to be a wholly-owned subsidiary for doing business throughout South America. (Ds' Mem. at 3.) Later that year, HSAL opened a store in Argentina under the name "Harrods." In 1913, plaintiff established Harrod's (Buenos Aires) Limited ("HBAL") as an independent English company to operate HSAL. (*Id.* at 4.) In the 1920s, HSAL ceased doing business, and HBAL took over all of its rights. (*Id.*) HBAL subsequently registered the mark "Harrods" in Paraguay, Uruguay, Brazil, Chile, Bolivia, Colombia, Peru and Venezuela. (*Id.*) In 1963, plaintiff sold its remaining shares in HBAL,

and from that time forward, there has been no further ownership connection between the plaintiff and HBAL. (*Id.* at 5.)

On February 16, 2000, plaintiff filed this *in rem* action under the ACPA for declaratory, injunctive, and other relief relating to the "improper registration and use" of sixty Internet domain names allegedly containing famous and distinctive marks belonging to plaintiff. (Compl. at ¶ 1.) Annexed to the complaint are the individual domain names, including, for example: cyberharrods.com, HARRODS-buenosaires.net, harrodsamerica.com, harrodsargentina.org, harrodsbank.net, harrodsbashopping.net, harrodsbrazil.com, harrodsshopping.com, harrodssouthamerica.org, harrodsstore.net, harrodsservices.org, and shoppingharrods.com. (*Id.*, Ex. 1.) Plaintiff advances four causes of action in its complaint: Federal Trademark Infringement (15 U.S.C. § 1114), Trademark Dilution (15 U.S.C. § 1125(c)), violation of the Anti–Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)), and Federal Unfair Competition (15 U.S.C. § 1125(a)). As relief, it asks that the sixty domain names be preliminarily and permanently transferred to plaintiff, and such other relief deemed just and proper by the Court.

All sixty Internet domain names cited in the complaint were registered by Network Solutions, Inc. ("NSI") to the registrant HBAL, a foreign corporation with its principal place of business in Buenos Aires, Argentina. NSI is a registrar of second-level domain names in the top-level domain ".COM," and is located in Herndon, Virginia. On March 27, 2000, NSI executed a Registrar Certificate indicating that HBAL is the registrant of the sixty Internet domain names. Plaintiff deposited the Registrar Certificate into the Registry of the Court on April 6, 2000. Also on that day, plaintiff sent, by Federal Express, copies of the complaint and Notice of Filing of the Registrar Certificate to HBAL at its Buenos Aires address. On April 18, 2000, plaintiff e-mailed copies of the documents to the address HBAL listed with NSI.

By Order of April 28, 2000, plaintiff was directed that notice by publication was unnecessary to effect service of process, because the record reflected that HBAL had received actual notice of plaintiff's action. The Court also ordered the domain names to appear no later than June 15, 2000 in order to defend their interests. On June 5, 2000, the sixty Internet domain names filed the Motion to Dismiss currently before the Court.

## II. DISCUSSION

Defendant domain names move to dismiss Counts I, II and IV for failure to state a claim because those counts advance claims that are unavailable in an *in rem* action. Plaintiff has not responded to this argument. Defendants also move to dismiss Count III for plaintiff's failure to allege bad faith intent to profit.

### A. Counts I, II and IV

Counts I, II and IV, respectively, allege: Federal Trademark Infringement, Trademark Dilution, and Federal Unfair Competition. However, as plaintiff states in the opening paragraph of its complaint, this is an *in rem* proceeding pursuant to the ACPA. (Compl. at ¶ 1.) An *in rem* action is brought against an offending *res*, not its owner, and no personal jurisdiction over the owner of the *res* is acquired by bringing such an action. 7A James Wm. Moore, *et al.*, *Moore's Federal Practice* ¶ 90, at 493–94 (2d ed.1996). In this case, plaintiff brought an *in rem* action because this Court cannot acquire *in personam* jurisdiction over HBAL, the owner of the offending *res* (the allegedly offending sixty Internet domain names). There is no evidence in this record that HBAL, a foreign corporation doing business in Buenos Aires, Argentina, is subject to the personal jurisdiction of this Court. Thus, plaintiff filed an *in rem* action pursuant to Section 2(a)(ii)(I) of the ACPA in this Court, because the registrar, NSI, is within this

judicial district and the ACPA provides that "a domain name shall be deemed to have its situs in the judicial district in which—(i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C).

Because HBAL is not before this Court *in personam,* plaintiff cannot pursue any cause of action with the potential to impose personal liability. As the Supreme Court has explained, the effect of a judgment in an *in rem* action is "limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court." *Shaffer v. Heitner,* 433 U.S. 186, 199, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Counts I, II and IV contemplate personal liability which is not possible in an *in rem* action. *See* 15 U.S.C. § 1114 (emphasis added) ("*Any person* who shall, without the consent of the registrant . . . in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . *shall be liable* in a civil action"); 15 U.S.C. § 1125(c)(2) (emphasis added) ("In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief . . . unless *the person against whom the injunction is sought* . . ."); 15 U.S.C. § 1125(a) (emphasis added) ("*Any person* who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake . . . *shall be liable* in a civil action"). For these reasons, Counts I, II and· IV will be dismissed.

### B. Count III

■ At issue with respect to Count III is whether plaintiff must plead the element of bad faith in an *in rem* proceeding brought under the ACPA. Defendants contend that plaintiff's claim is insufficiently pled for failure to allege bad faith intent. Plaintiff's position is that the ACPA sets out bad faith intent as an element exclusively for the *in personam* cause of action.

Plaintiff bases its argument on the statutory language which provides:

(1)(A) *A person shall be liable in a civil action* by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a *bad faith intent* to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of· the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18, United States Code, or section 220506 of title 36, United States Code.

(B)(i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

(2)(A) *The owner of a mark may file an in rem civil action against a domain name* in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

(ii) the court finds that the owner—

(I) is not able to obtain in personam jurisdiction over a person who would

have been a defendant in a civil action under paragraph (1); or

(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action.

(B) The actions under subparagraph (A)(ii) shall constitute service of process.

(C) In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

.  .  .  .  .

(D)(i) The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

.  .  .  .  .

(ii) The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

(3) The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

(4) The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

15 U.S.C. § 1125(d) (emphasis added). According to plaintiff, because "bad faith intent" is not mentioned in the subsection creating the in rem action, it cannot be an element of that action. Plaintiff also argues that its statutory construction is consistent with the structure of the ACPA. By plaintiff's reasoning, Congress deliberately divided the new subsection (d) created by the ACPA into four paragraphs, so that paragraphs (1) and (2) would be read to create two distinct causes of action: a "civil action" in paragraph (1) and an "in rem civil action" in paragraph (2). Plaintiff maintains that Congress's intent to create two separate causes of action, with distinct elements, is manifest in the internal references of paragraphs (1) and (2). Whereas paragraph (1) begins, "[a] person shall be liable in a civil action," 15 U.S.C. § 1125(d)(1)(A) (emphasis added), paragraph (2) begins, "[t]he owner of a mark may file an in rem civil action." 15 U.S.C. § 1125(d)(2)(A) (emphasis added). As further support of this interpretation, plaintiff notes that paragraph (3) of subsection (d) refers to the two preceding paragraphs as if they establish separate causes of action: "The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable." 15 U.S.C. § 1125(d)(3).

Finally, plaintiff argues that imposing "bad faith intent" as a required element of the in rem action would undermine the purpose of the ACPA, which is to protect trademark owners who cannot find the registrants of an allegedly infringing domain name. Plaintiff maintains that the in rem provision would be rendered a virtual nullity if trademark owners had to prove something about the "intent" of people it cannot find in order to obtain a remedy. It also points to the difference between the remedies available under the in rem proceeding (forfeiture, cancellation or transfer of the defendant domain name) with the broader remedies, such as monetary dam-

ages, available in an *in personam* action. 15 U.S.C. § 1125(d)(2)(D)(i); 15 U.S.C. § 1125(d)(1)(A). Plaintiff argues that, given the less onerous remedies available for an *in rem* action, a lower pleading standard, that is, one without a bad faith element, is logical.

Defendants contend that paragraphs (1) and (2) of subsection (d) cannot be read independently of one another because to do so would undermine Congress's goal of discouraging "cybersquatting" which is defined by the Act as: "registering, trafficking in, or using domain names (Internet addresses) that are identical or confusingly similar to trademarks with the *bad faith intent* to profit from the goodwill of the trademarks." H.R.Rep. No. 106–412 at 8 (1999) (emphasis added).

This is a matter of first impression for this Court. Only one other federal court has addressed this issue. In *BroadBridge Media v. Hypercd.com*, No. 00–CV–288(RO), 2000 WL 959715 (S.D.N.Y.2000), the court found that "bad faith intent to profit is a necessary element" of an *in rem* action under the ACPA. *Id.* at *5. We agree with this conclusion and the reasoning which leads to it.

Distilled to its essence, paragraph (2) provides:

(A) *The owner of a mark may file an in rem civil action against a domain name* in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located *if —*

(i) *the domain name violates any right of the owner of a mark* registered in the Patent and Trademark Office, or protected under subsection (a) or (c); *and*

(ii) *the court finds that the owner —*

(I) *is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1);* or

(II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—. . .

15 U.S.C. § 1125(d)(2) (emphasis added). Paragraph (2) makes two explicit references to "a person who would have been a defendant in a civil action under paragraph (1)," thus directing the reader back to paragraph (1) for a definition of that person:

(A) A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark . . . and

(ii) registers, traffics in, or uses a domain name that . . .

15 U.S.C. § 1125(d)(1). In other words, paragraphs (1) and (2) cannot be read in total isolation, as plaintiff advocates, but rather, must be read together as paragraph (2) explicitly instructs. The provision of paragraph (1) incorporated by reference into paragraph (2) defines potential defendants under the ACPA as persons with a "bad faith intent to profit," and paragraph (2) requires that, as a prerequisite to any relief in an *in rem* proceeding, the Court make a finding that plaintiff cannot obtain *in personam* jurisdiction over such potential defendants. As the *BroadBridge* court explained:

Congress limited the *in rem* action against a domain name to those situations where the court finds the owner is unable 'to obtain *in personam* jurisdiction over a person who would have been a defendant under paragraph (1).' To be brought in as a defendant under paragraph (1) requires, in addition to the other elements, a bad faith intent to profit.

2000 WL 959715 at *5.

Congress did not need to mention paragraph (1) in paragraph (2), but could have merely required the court presiding over an *in rem* action to make a finding that *in*

*personam* jurisdiction could not be obtained over the "person who registered the domain name." Had Congress done so, we could draw no inference of congressional intent to limit *in rem* proceedings to cases where there is evidence of bad faith. However, because Congress chose to include in the *in rem* action the definition of potential defendants used in paragraph (1), we must therefore conclude that Congress intended for the "bad faith intent to profit" element to be part of any *in rem* action.

Our statutory interpretation is consistent with the legislative history of the ACPA, which makes clear that the statute's scope is narrow. The ACPA was not designed to combat domain name registrants utterly ignorant of certain existing trademarks, or those registrants with a good faith reason to believe that they have the right to register certain domain names. On the contrary, as its title reflects, the AntiCybersquatting Consumer Protection Act was designed to combat "cybersquatting" or "cyberpiracy," defined as "registering, trafficking in, or using similar to trademarks *with the bad-faith intent to profit* from the goodwill of the trademarks." H.R.Rep. No. 106–412 (1999) (emphasis added); S.Rep. No. 106–140 (1999) (emphasis added) (cybersquatting refers to the "deliberate, *bad-faith,* and abusive registration of Internet domain names in violation of the rights of trademark owners"). Every provision of the ACPA reflects Congress's intent to address the cybersquatting problem, not the innocent or good-faith registration of domain names that may infringe existing trade marks. As the House Conference Committee explained:

> The bill is carefully and narrowly tailored, however, to extend only to cases where the plaintiff can demonstrate that the defendant registered, trafficked in, or used the offending domain name *with bad-faith intent to profit* from the goodwill of a mark belonging to someone else. Thus, the bill does not extend to innocent domain name registrations by those who are unaware of another's use

of the name, or even to someone who is aware of the trademark status of the name but registers a domain name containing the mark for any reason other than with bad faith intent to profit from the goodwill associated with that mark.

H.R.Conf.Rep. No. 106–464, (1999) (emphasis added); S.Rep. No. 106–140 ("[u]nder the bill ... the abusive conduct that is made actionable is appropriately limited just to bad-faith registrations and uses of others' marks by persons who seek to profit unfairly from the goodwill associated therewith").

We understand plaintiff's concern that a requirement of showing "bad faith intent" in an *in rem* proceeding, which Congress created largely for the purpose of providing remedies for trademark owners who cannot find a person or entity responsible for registering the offending domain names, will be difficult in a default proceeding. *See* S.Rep. No. 106–140 ("[a] significant problem ... in the fight against cybersquatting is ... many cybersquatters register domain names under aliases or otherwise provide false information in their registration applications in order to avoid identification and service of process by the mark owner ... [The ACPA] will alleviate this difficulty ... by enabling a mark owner to seek an injunction against the infringing property"). However, we think that plaintiff's fear is unfounded. Among the eight non-exclusive factors Congress directed the courts to consider in their analysis of the bad faith intent element under the ACPA is whether the registrant has provided accurate information to the registrar, such as: "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(VII). Failure to keep one's address current or to leave an accurate forwarding address certainly casts doubt on the bona fides of a

registrant. This fact coupled with the similarity of the offending mark may well be sufficient to enable a plaintiff facing a defaulting domain name to obtain an *in rem* judgment against the domain name.

Because we find that bad faith intent to profit is a necessary element of an *in rem* action under the ACPA, and plaintiff has not sufficiently alleged that element,[1] defendants' Motion to Dismiss as to Count III will be granted and Count III will be dismissed without prejudice. Plaintiff will have eleven days to file an amended complaint. Defendants also argue that its motion to dismiss Count III should be converted to a motion for summary judgment and that it should prevail on the merits because the evidence reveals a lack of bad faith. We find that, in this case, where discovery has not even begun, the evidentiary record has not been established and it would be premature to consider defendants' motion for summary judgment. Therefore, that request will be denied.

## III. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, will be granted as to the motion to dismiss and denied as to the request for summary judgment. Counts I, II and IV will be dismissed with prejudice and Count III will be dismissed without prejudice.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.

---

1. Plaintiff neither explicitly nor implicitly alleged bad faith intent to profit. It merely alleged that the domain names violate the ACPA, in that they are confusingly similar to plaintiff's trademarks and/ or dilutive of its famous trademarks. This pleading is insufficient in our view. (Compl. at ¶ 32.)