BANCO INVERLAT, S.A., Plaintiff,

v.

WWW.INVERLAT.COM,
et al., Defendants.

No. Civ.A. 00–640–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 8, 2000.

John A. Trocki, III, John P. Corrado, Morrison & Foerster, L.L.P., Washington, DC, for plaintiffs.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *in rem* action against two Internet domain names and their foreign registrants, filed pursuant to the Anti–Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), is before the Court on plaintiff's motion to waive an order of publication and to set a time certain by which defendants must respond. At issue is whether a court has the discretion to excuse the ACPA's requirement in *in rem* actions for service by publication where service is accomplished by the ACPA's alternative means of service via the postal and e-mail addresses on record for the domain names in issue. For the reasons that follow, the ACPA, fairly read, grants courts this discretion.

### I

Plaintiff, Banco Inverlat, S.A., is a Mexican corporation with its principal place of business in Mexico City, Mexico. Since 1991, plaintiff has used the "Inverlat" trademark in connection with the provision of financial services in the United States and internationally. In September 1999, plaintiff registered this trademark with the Mexican trademark registration authority, the Instituto Mexicano de la Propiedad

Industrial (IMPI). Additionally, since late 1998, plaintiff has used the "Inverweb" trademark in connection with the provision of financial services over the Internet. Plaintiff registered this trademark with the IMPI in February 1999.

Defendant Mauricio De La Orta, an individual located at Av. Emiliano Zapata 366 Col., Sta Cruz, Atoyac, Mexico, DF 03310, MX, is the owner and president of defendant Inter Info, a Mexican corporation engaged in the business of registering and selling domain names. Network Solutions, Inc. (NSI), located in Herndon, Virginia, is a registrar of second-level domain names in the top-level domain ".com." On December 27, 1999, defendant Inter Info, which is unrelated to plaintiff, registered the domain name <www.inverlat.com> with NSI. The following month, on January 23, 2000, defendant De La Orta, who is unrelated to plaintiff, registered the domain name <www.inverweb.com> with NSI.

■ On April 14, 2000, plaintiff filed this *in rem* ACPA action against defendants alleging, among other things, that defendants registered the subject domain names with the bad faith intent to profit from plaintiff's "Inverlat" and "Inverweb" trademarks.[1] Based on defendants' alleged violations of the ACPA, plaintiff requests preliminary and permanent transfer of the subject domain names to plaintiff.

On May 1, 2000, NSI signed a Registrar Certificate indicating that defendants Inter Info and De La Orta had registered the subject domain names with NSI, respectively, on December 27, 1999, and January 23, 2000. And, by signing the Registrar Certificate, NSI deposited control of the use and disposition of the subject domain names with the Court, and agreed not to suspend, modify, or transfer the domain names until the Court issues a final order disposing of plaintiff's ACPA claims against defendants. *See* 15 U.S.C. § 1125(d)(2)(D)(i)(I) –(II).

On May 8, 2000, plaintiff deposited NSI's Registrar Certificate into the Registry of this Court. The same day, plaintiff sent to defendants Inter Info and De La Orta, by overnight mail, a copy of the complaint and Notice of Deposit of the Registrar Certificate. And, as evidenced by confirmation reports, both party defendants received the materials at their respective addresses in Mexico. Additionally, on June 8, 2000, plaintiff met with defendant De La Orta, and in the course of the meeting, plaintiff confirmed that both defendant De La Orta and defendant Inter Info had received actual notice of this action. Additionally, on August 11, 2000, plaintiff sent copies of the instant motion, together with the supporting memorandum and declarations, translated into Spanish, to the e-mail address submitted to NSI by defendants Inter Info and De La Orta. Plaintiff received computer confirmation that defendants opened the e-mail message the next day, on August 12, 2000.

In these circumstances, given that defendants Inter Info and De La Orta have actual, confirmed notice of this *in rem* action, plaintiff now seeks an order allowing it to dispense with an order of publication under the ACPA.

## II

The ACPA sets forth two means by which service of process of an *in rem*

---

**1.** Pursuant to the ACPA, 15 U.S.C. § 1125(d)(2)(A), the owner of a trademark may file an *in rem* civil action against any infringing domain name "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located" if "(i) the domain name violates any right of the owner of a mark ..." and "(ii) the court finds that the owner ... is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under [the ACPA]." In the case at bar, an *in rem* action was warranted given that there appears to be no basis for asserting personal jurisdiction over the party defendants. In this regard, it is established that the mere act of registering a disputed domain name with NSI in Virginia, as done here, is insufficient to subject a defendant to the personal jurisdiction of this Court. *See, e.g., Heathmount A.E. Corp. v. Technodome.Com.*, 106 F.Supp.2d 860, 867 (E.D.Va.2000).

action may be accomplished, namely: "(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar," and "(bb) publishing notice of the action as the court may direct promptly after filing the action." 15 U.S.C. § 1125(d)(2)(A)(ii)(II).[2] As previously discussed, plaintiff has fully complied with the requirements of § (aa), and as a result of such compliance, defendants Inter Info and De La Orta have actual notice of this *in rem* action. Given this, the question remains whether plaintiff is nonetheless required to publish notice of this action in accordance with the provisions of § (bb).

■ Because this is a question of statutory construction, analysis must begin with the plain language of the statute. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). And, where a statute's plain language is clear and unambiguous, analysis must also end with the statute's plain language. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). If, however, the operative statutory language is ambiguous, the remaining statutory language and the purpose of the statute must be examined for clues concerning Congress' intent concerning the disputed statutory language. *See United States v. Jackson*, 759 F.2d 342, 344 (4th Cir.1985). In other words, it is necessary to ascertain the purpose of the statutory language and assign to the phrase the meaning most consistent with that purpose. *See Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990).

■ The statute's plain language is dispositive of this issue; it makes plain that courts have discretion to excuse the requirement for publication in appropriate circumstances. Thus, § (bb) provides, in pertinent part, that a plaintiff shall publish notice of an *in rem* action "as the court *may* direct promptly after filing the action." (Emphasis added). The presence of the word "may" in § (bb) is properly read to mean that the publication requirement is within a court's discretion, meaning that a court may or may not direct notice by publication, depending on the circumstances.

Yet, even assuming an ambiguity in this regard, statutory purpose compels the same result. Specifically, even assuming that the word "may" might be read to refer not to whether publication should be ordered at all, but instead only to particular means of publication, this reading must be rejected as inconsistent with the ACPA's purpose. *See Jackson*, 759 F.2d at 344.

The plain purpose of §§ (aa) and (bb), insofar as those sections relate to service of process, is to provide notice to the adverse party, the registrant of the disputed domain names, that his or her property is at issue in litigation. Given this, it is clear that where, as here, a defendant has actual notice that an *in rem* action has been filed against his or her property, as a result of having received a copy of the relevant pleadings by regular mail and by e-mail in accordance with the provisions of § (aa), any further notice by publication pursuant to § (bb) would be superfluous. Thus, in circumstances such as those at bar, a court may properly waive the publication requirement of § (bb). This conclusion is fully consistent with the service of process aspect of §§ (aa) and (bb). *See Crandon*, 494 U.S. at 158, 110 S.Ct. 997. A contrary result would have Congress mandating a useless act in certain circumstances.

---

2. In addition to providing the appropriate means for service of process, §§ (aa) and (bb) also comprise the means by which a plaintiff exercises "due diligence" to "find a person who would have been a defendant in a civil action under [the ACPA]." 15 U.S.C. § 1125(d)(2)(A)(ii).

Accordingly, because defendants Inter Info and De La Orta were properly served under § (aa) and received actual notice of this *in rem* action, plaintiff's motion to waive an order of publication and to set a time certain by which defendants must respond shall be granted.

An appropriate Order will issue.