**CABLE NEWS NETWORK L.P., L.L.L.P., Plaintiff,**

v.

**CNNEWS.COM, Defendant.**

No. Civ.A. 00–2022–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 18, 2001.

Janis R. Orfe, The Law Offices of Janis Orfe, P.C., Fairfax, VA, for plaintiff.

Paul Edward Dietze, Pennie & Edmonds, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue on a threshold dismissal motion in this *in rem* action brought under the Anticybersquatting Consumer Protection Act[1] ("ACPA") are the following questions:

(1) Does an ACPA *in rem* action comport with due process where, as here, the registry is located in this jurisdic-

---

1.  15 U.S.C. § 1125(d) (2001).

tion, but the absent registrant is a Chinese entity that has no minimal contacts with any state in the United States and uses the infringing domain name in connection with a website that is wholly in the Chinese language and directed to persons in China?

(2) Is a showing of bad faith a jurisdictional requirement for maintaining an ACPA *in rem* action?

(3) Does Rule 19(b), Fed.R.Civ.P., require a plaintiff in an ACPA *in rem* action to join parties claiming an interest in the allegedly infringing domain name?

(4) Does a plaintiff properly effect service of process in an ACPA *in rem* action where, as here, it has published notice of the action in accordance with a court order and has sent notice of the matter to the registrant of the domain name at the address the registrant provided to the registrar?

## I.

Plaintiff, Cable News Network L.P., L.L.L.P., is a Delaware limited liability limited partnership with its principal place of business in Atlanta, Georgia. It is engaged in the business of providing news and information services throughout the world via a variety of electronic media. It

is also the owner of the trademark "CNN," which plaintiff has registered in this country[2] and dozens of others, including China. Since at least 1980, plaintiff has used its registered CNN trademark in connection with providing news and information services to people worldwide through a variety of cable and satellite television networks, private networks, radio networks, websites, and syndicated news services. Some of these services are accessible in China and provided in the Chinese language. Since adopting the CNN mark, plaintiff has used the mark "CNN" in the names of all of its broadcast networks, the best known of which include CNN Headline News, CNN En Espanol, CNNSI, CNNFN, and CNN International. Plaintiff's services are also accessible worldwide via the internet at the domain name "cnn.com." There can be no doubt that plaintiff's CNN mark is famous.[3]

■■■ Maya Online Broadband Network (HK) Co. Ltd. ("Maya") is a Chinese company that is a subsidiary of a second Chinese company, Shanghai Online Broadband Network Co. Ltd. On November 12, 1999, Maya's general manager, Heyu Wang, registered the domain name "cnnews.com" with Network Solutions, Inc. ("NSI"), a domain name registrar and registry,[4] located in Herndon, Virginia.[5]

2. Plaintiff has numerous trademark registrations from the United States Patent and Trademark Office for various marks consisting in whole or in part of the name "CNN." *See, e.g.,* U.S. Patent No. 1,587,839.

3. Typically, a mark owner seeking an ACPA remedy against an infringer must show that its mark is "distinctive" or "famous." 15 U.S.C. § 1125(d)(1)(A)(ii)(I)–(II); *see also* 15 U.S.C. § 1125(c) (remedies for dilution limited to famous marks).

4. The functions of a "registrar" and "registry" are distinct. A registry "is the single official entity that maintains all official rec-

ords regarding registrations in the TLD (top level domain)...." *Fleetboston Financial Corp. v. Fleetbostonfinancial.com,* 138 F.Supp.2d 121, 123 n. 2 (D.Mass.2001) (internal citations and quotation marks omitted). Thus, there is only one official registry for each TLD, such as ".com," ".org," and ".edu." By contrast, a registrar "is one of several entities, for a given TLD, that is authorized by ICANN [Internet Corporation for Assigned Names and Numbers] to grant registration of domain names to registrants." *Id.*

5. At that time, NSI served as both registrar and registry for all .com domain names, including cnnews.com. NSI has since been ac-

Maya operates the cnnews.com website, which is designed to provide news and information to Chinese-speaking individuals worldwide. This website is part of Maya's comprehensive on-line services system that includes video on demand, broadband services, and a variety of e-business services. The cnnews.com website is one of many sites linked to Maya's main website, cnmaya.com.[6] The "cn" prefix apparently refers to "China," where the characters "cn" are widely used and understood as an abbreviation for the country name "China." The top level internet domain for China is "cn."[7] Given this, Maya, the respondent in this action,[8] asserts that its choice of the domain name cnnews.com was entirely reasonable and that it did not select or use this domain name in bad faith. And Maya further points out that most people who access the cnnews.com website in China likely have never heard of CNN, as most Chinese citizens lack access to plaintiff's television stations and websites.

Maya asserts that the target audience of its online services, including cnnews.com, is located entirely within China. Maya also asserts that it does not advertise any of its services outside of China, sells no products or services to persons outside of China, does not ship goods outside of China, or accept payments from any source outside of China. In confirmation of these assertions, Maya proffers statistics reflect-

ing that 99.5% of the registered users of Maya's websites are located within Chinese cities. It appears, moreover, that all of Maya's business is conducted in the Chinese language and that it transacts no business in the United States.

Plaintiff acted promptly on discovering that Wang had registered the cnnews.com domain name with NSI and that Maya had posted news information on that site. First, plaintiff notified Wang of its service mark rights and demanded that he transfer the domain name cnnews.com to plaintiff. Plaintiff also warned that it would pursue an ACPA *in rem* action in the Eastern District of Virginia to acquire control over the cnnews.com domain name if he failed to comply. Maya responded to plaintiff's communications with Wang, indicating that it did not intend to comply with plaintiff's demands. Next, plaintiff suggested that Maya change the domain name of its news website to "cn-news.com" and use the new domain name only in Chinese characters. Maya rejected this proposal and plaintiff subsequently filed this complaint.

■ With respect to service of process, plaintiff filed a motion seeking a waiver of the ACPA's requirement for service by publication[9] on the ground that Maya already had received actual notice of this action. This motion was denied. Plaintiff, however, served a copy of this motion on the attorney for Maya and Wang. Al-

quired by Verisign Global Registry Services ("Verisign"), also located in Herndon, Virginia. Verisign continues to operate as one of a number of domain name registrars and is the sole and exclusive registry for certain TLDs, including the TLD ".com."

**6.** Other Maya websites include cnsport.com and cnnav.com.

**7.** Other non-Maya-affiliated websites in China use the "cn" prefix, many of which are news- or information-related. Examples include

cnnctv.com (China National Communication and Television Net), cnnac.com (China Network and Communication), cnnettv.net (China Network TV Net).

**8.** Although both Maya and Wang initially noted appearances in this case, Maya is the sole remaining respondent in this matter.

**9.** *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(bb) (To effect service of process, the owner of a mark must, *inter alia*, "publish[ ] notice of the action as [a] court may direct . . . .").

though the attorney responded that he lacked authority to accept service of process on behalf of Maya or Wang, he sent plaintiff a copy of the WHOIS record [10] for the cnnews.com domain name, which listed the address of Maya and Wang. The WHOIS record also revealed that after this controversy had arisen, but before plaintiff filed its complaint, Wang had changed the registrar for the cnnews.com domain name from NSI to Eastern Communications Company Limited ("Eastcom"), a Chinese registrar. Notwithstanding this change of registrars, Verisign continues to be the registry for the cnnews.com domain name, as it is for all ".com" websites.[11] Additionally, plaintiff learned that Wang had also changed the registrant of the domain name from himself to Maya, but kept himself as the administrative contact.

After filing its amended complaint,[12] plaintiff sent a copy of this complaint by e-mail and FedEx to Maya and Wang at the contact address listed in the WHOIS record. The FedEx package was returned as undeliverable because neither Maya nor Wang was found at the WHOIS address. Given the denial of a waiver of service by publication, plaintiff filed a motion request-

ing permission to serve process by publication pursuant to 15 U.S.C. § 1125(d)(2)(B). Plaintiff attempted to serve a copy of this motion on Maya and Wang by e-mail and FedEx. Neither Maya nor Wang filed an opposition to plaintiff's motion, and the motion was granted. Plaintiff thereafter completed service by publication by printing notice of the action for five consecutive days in Chinese, in the Hong Kong newspapers *Sing Tao* and *Apple Daily*, and in English, in the Hong Kong newspaper *South China Morning Post.*

During the course of this litigation, Eastcom, the current registrar for the cnnews.com domain name, and Verisign, the registry, agreed to transfer control of the cnnews.com domain name to this Court by depositing a registrar certificate for the cnnews.com domain name with the Court, as the ACPA requires. *See* 15 U.S.C. § 1125(d)(2)(D). This Certificate, by its terms, "tenders to the Court complete control and authority over the registration for the cnnews.com domain name registration record."

Maya's dismissal motion advances four arguments. Specifically, Maya argues that dismissal is required because

10. "WHOIS" is the Verisign data base consisting, *inter alia,* of registrants' names and addresses. This data base includes the contact addresses Maya and Wang provided to NSI and to Eastcom.

11. Thus, the change in registrars for cnnews.com had no effect on the situs of the power to transfer the domain name, as that power remained with Verisign. By exclusive contract with the United States Department of Commerce and ICANN, Verisign is the *exclusive* registry for all domain names in the ".com" top-level domain, including cnnews.com. *See, e.g., Thomas v. Network Solutions, Inc.,* 176 F.3d 500, 504 (D.C.Cir.1999). As such, Verisign maintains the root zone file for the ".com" top-level domain. This file is compiled from all registrations in the ".com" top-level domain submitted by all authorized reg-

istrars and contains the domain names in the ".com" top-level domain and their corresponding Internet Protocol ("IP") numbers or "addresses." These addresses are normally assigned by the registrars for the domain names. Yet, because Verisign controls the entries in the root zone file for the ".com" top-level domain, it has the ability to change the IP number matched with a particular domain name in the " .com" top-level domain. This effectively enables Verisign to transfer control of a domain name by matching the domain name with a different IP address in the root zone file.

12. Plaintiff filed an amended complaint to notify the court of the fact that Maya had become the registrant of the disputed domain name.

(i) the ACPA's *in rem* provisions, if applicable here, do not provide a constitutionally permissible basis for jurisdiction;

(ii) bad faith is a jurisdictional element of an ACPA *in rem* action that plaintiff has failed to plead and prove;

(iii) plaintiff has failed to join Maya as an indispensable party as required by Rule 19(b), Fed.R.Civ.P.; and

(iv) plaintiff's service of process is fatally defective.

For the reasons that follow, these arguments fail.

## II.

■ At the outset, it is necessary to confirm that this action meets the ACPA criteria for an *in rem* action. These criteria, found in 15 U.S.C. § 1125(d)(2)(A), make clear that the owner of a mark, like plaintiff, may maintain an *in rem* action against an infringing domain name (i) if the action is brought in the jurisdiction where the registrar or registry of the infringing domain name is located,[13] and (ii)

if *in personam* jurisdiction over the registrant does not exist.[14] This action fits squarely within these criteria.[15] The registry for the allegedly infringing domain name is located in this jurisdiction and it is clear on this record that there is no *in personam* jurisdiction over Wang or Maya, the former and current registrants of cnnews.com.[16] Thus, *in rem* jurisdiction is proper.

■ But the analysis cannot end here, for if it is clear that this action meets the ACPA criteria for an *in rem* action against a domain name, it is less clear that such an action comports with due process in light of *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Put another way, the question is whether judicial disposition of an absent registrant's substantive rights to an infringing domain name in an ACPA *in rem* action is consistent with due process.

## III.

■ More than twenty years ago, the Supreme Court, in a close and controver-

---

13. *See* 15 U.S.C. § 1125(d)(2)(A).

14. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(I). *See also Alitalia–Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F.Supp.2d 340, 344–45 (E.D.Va.2001) (holding that the ACPA's *in personam* and *in rem* provisions are mutually exclusive).

15. Plaintiff's alternative argument, that Section 1125(d)(2)(C) provides additional means to attain *in rem* jurisdiction, does not fare as well. This section does not confer *in rem* jurisdiction; instead, by its terms, it merely provides that a domain name has a "situs" where the domain name registrar, registry, or other domain name authority is located *and* where "documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court." 15 U.S.C. § 1125(d)(2)(C). Moreover, were both Section 1125(d)(2)(A) *and* Section 1125(d)(2)(C) to be read as providing *in rem* jurisdiction, all of Section 1125(d)(2)(A) and portions of Section 1125(d)(2)(C) would be rendered redundant, an impermissible result. *See Fleetboston*, 138 F.Supp.2d at 124–26 (discussing the redundancy problems that would follow if Section 1125(d)(2)(C) were read as to confer *in rem* jurisdiction). Courts generally avoid interpreting statutes in such a way as to make any part redundant. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955).

16. From this record, it appears that the only contacts either Wang or Maya has had with any American jurisdiction are those incident to the initial registration of cnnews.com with NSI. It is sensibly settled that these contacts do not provide a constitutionally adequate basis for the exercise of *in personam* jurisdiction. *See America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 855–60 (E.D.Va.2000); *Heathmount A.E. Corp. v. Technodome.Com*, 106 F.Supp.2d 860, 865–66 (E.D.Va.2000).

sial decision, cast doubt on the constitutionality of certain *in rem* proceedings. *See Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Properly understood, *Shaffer* is no bar to an ACPA *in rem* action.

In *Shaffer*, the Supreme Court held unconstitutional a Delaware statute that provided *in rem* jurisdiction by allowing the sequestration of stock of a Delaware corporation so as to compel the personal appearance of nonresident corporate managers who owned shares of the stock and were facing a shareholders' derivative lawsuit in Delaware state court. *See Shaffer*, 433 U.S. at 193, 97 S.Ct. 2569. In *Shaffer*, *in rem* jurisdiction was invoked solely to compel the appearance of the defendants in a matter unrelated to the property upon which *in rem* jurisdiction was based. *See id.*

To understand *Shaffer*, it is necessary to distinguish three types of *in rem* actions, as does *Hanson v. Denckla*, 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and then to understand *Shaffer's* effect on each type. The first of the three, usually called simply *"in rem"* or "true *in rem*," arises when a court adjudicates the property rights corresponding to a particular *res* for every potential rights holder, whether each rights holder is named in the proceeding or not. *See Hanson*, 357 U.S. at 246 n. 12, 78 S.Ct. 1228. ACPA *in rem* actions, including the case at bar, are of the "true *in rem*" genre because they involve the rights of a disputed mark for every potential rights holder. The second type of *in rem* action is the "quasi *in*

*rem*" or "quasi *in rem* I" action, which allocates property rights as against particular named persons. *See id.* Examples of this type of litigation include actions to remove a cloud on a land title or actions seeking quiet title against another individual's claim. The third type of *in rem* proceeding, "quasi *in rem* II," [17] concerns the rights of a particular person or persons in a thing, but is distinguished from quasi *in rem* I claims because the underlying claim in a quasi *in rem* II matter is unrelated to the *res* that provides jurisdiction. *Shaffer* was a quasi *in rem* II matter because the suit itself (a shareholders' derivative action alleging misconduct against a corporation's directors and officers) was unrelated to the *res* that established jurisdiction (the stock certificates owned by the managers of the corporation). *See Shaffer*, 433 U.S. at 193, 97 S.Ct. 2569.

*Shaffer* clearly holds that quasi *in rem* II and *in personam* proceedings require the same minimum contacts so as to satisfy due process, as discussed in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[18] *See Shaffer*, 433 U.S. at 209, 97 S.Ct. 2569. It is less clear, however, how, if at all, *Shaffer* affects true *in rem* and quasi *in rem* I cases. To be sure, there is language in *Shaffer* that could be read to require that *all in rem* cases conform to the same due process constraints as *in personam* cases. For instance, the *Shaffer* opinion states that "[t]he standard for determining whether an exercise of jurisdiction over the interest of persons is consistent with

---

17. This type of action is also known as an "attachment" or "sequestration" proceeding. *See Hanson*, 357 U.S. at 246 n. 12, 78 S.Ct. 1228.

18. The Supreme Court in *International Shoe* held that "in order to subject a defendant to a judgment *in personam*, if he be not present

within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice". *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted).

the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe.*" *Shaffer,* 433 U.S. at 207, 97 S.Ct. 2569. Some courts, therefore, have held that *Shaffer* commands that all types of *in rem* actions must have the same minimum contacts as required for *in personam* actions. *See, e.g., Fleetboston,* 138 F.Supp.2d at 133–34. Yet, the greater weight of (and more persuasive) authority holds that the language of *Shaffer* requires minimum contacts only for quasi *in rem* II-type cases.[19] Indeed, *Shaffer's* language regarding true *in rem* and quasi *in rem* I matters was unnecessary to the holding and is therefore non-binding dicta. *See Humphrey's Executor v. United States,* 295 U.S. 602, 627, 55 S.Ct. 869, 79 L.Ed. 1611 (1935) (holding that dicta may be followed if it is sufficiently persuasive, but it is not binding). Because neither a true *in rem* case, nor a quasi *in rem* I case was before the Supreme Court in *Shaffer,* the case's holding does not reach those categories. Furthermore, despite the *Shaffer* decision, it remains generally accepted that when "property is found within the forum state and other prerequisites to *in rem* jurisdiction are satisfied, courts have routinely (if not unanimously) exercised jurisdiction over competing claims to the property without any hint of a due process problem." Thomas R. Lee, *In*

*Rem Jurisdiction in Cyberspace,* 75 Wash. L.Rev. 97, 142 (2000). Finally, to hold that *Shaffer* requires the same minimum contacts in all *in rem* cases as for *in personam* cases would run counter to historical practice[20] and common sense.[21] In sum, *Shaffer,* properly construed, holds only that quasi *in rem* II actions require the same minimum contacts as *in personam* jurisdiction actions. Thus, where, as here, the action is properly categorized as "true *in rem,*" there is no requirement that the owner or claimant of the *res* have minimum contacts with the forum. More particularly, in an ACPA *in rem* action, it is not necessary that the allegedly infringing registrant have minimum contacts with the forum; it is enough, as here, that the registry is located in the forum.

The result reached here is consistent with three district court opinions that have addressed constitutionality issues regarding the ACPA's *in rem* provisions, none of which has even suggested that it might be unconstitutional to establish *in rem* jurisdiction in the district where the domain name's registry is located. *Fleetboston* and *Mattel, Inc. v. Barbie–Club.Com* each held that there is no constitutional basis for *in rem* jurisdiction when the adjudicating court merely has possession of the certificate of the domain name, but the registrar, registry, or other domain name

19. *See Burnham v. Superior Court of California,* 495 U.S. 604, 619–28, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (opinion of Scalia, J.); *Schreiber v. Allis–Chalmers Corp.,* 611 F.2d 790, 793–94 (10th Cir.1979); *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 654–55 (2d Cir. 1979); *Caesars World, Inc. v. Caesars-Palace.Com,* 112 F.Supp.2d 502, 503–04 (E.D.Va. 2000); *John N. John, Jr., Inc. v. Brahma Petroleum Corp.,* 699 F.Supp. 1220, 1222 (W.D.La.1988). *See also* Thomas R. Lee, *In Rem Jurisdiction in Cyberspace,* 75 Wash. L.Rev. 97 (2000); Walter W. Heiser, *A "Minimum Interest" Approach to Personal Jurisdiction,* 35 Wake Forest L.Rev. 915 (2000).

20. *See Burnham,* 495 U.S. at 622–28, 110 S.Ct. 2105 (opinion of Scalia, J.).

21. Worth noting, too, is that if ACPA *in rem* actions required due process minimum contacts, the *in rem* provision of the ACPA would be rendered a nullity. This is so because the ACPA provides that an *in rem* action may only be brought if no *in personam* action is available and were the Constitution to require the same minimum contacts for *in rem* actions as it does for *in personam* actions, then an *in rem* ACPA action would never be constitutionally proper.

authority is not located in the court's district. *See Fleetboston,* 138 F.Supp.2d at 128–35; *Mattel, Inc. v. Barbie–Club.Com,* 2001 WL 436207, at *2 (S.D.N.Y.2001). And, *Caesars World* held that *in rem* jurisdiction is constitutionally proper when a court sits in the same district in which the registrar is located. *See Caesars World,* 112 F.Supp.2d at 503–05.

In sum, this *in rem* action may proceed because it is sufficient under the ACPA and the Constitution that the registry for cnnews.com is located within this district. The constitutionality of this action is further strengthened by the current Chinese registrar's decision to transfer the domain name certificate for cnnews.com to this Court. Thus, it may be said that the domain name's situs is here. *See* 15 U.S.C. § 1125(d)(2)(A). *See also Caesars World,* 112 F.Supp.2d at 504 (holding that "[e]ven if a domain name is no more than data, Congress can make data property and assign its place of registration as its situs").[22]

■ Maya argues further that *in rem* jurisdiction is improper because there is no contractual relationship between Verisign, the registry, and Maya, the registrant. Yet, this argument misses the crucial difference between *in rem* and *in personam* actions. What matters in an *in rem* case is not the contractual relation that may exist between a registrant and a registrar, but rather the nexus that exists between the registry, Verisign, and the domain name, cnnews.com. It is this nexus that matters for ACPA *in rem* actions. Thus, because Verisign serves as the registry for all ".com" domain names, including cnnews.com, and controls the entries in the root zone file for the ".com" top-level domain, it is able to transfer control of a domain name by matching the domain name with a different IP address in the root zone file. Because Verisign is located within this district and has control over the cnnews.com domain name, *in rem* jurisdiction in this case is therefore constitutional.

## IV.

Maya argues that plaintiff in this ACPA *in rem* action must plead and prove a registrant's bad faith to withstand a threshold jurisdictional challenge. This argument fails, for it confuses a jurisdictional requirement with a substantive element of a cause of action. The bad faith requirement in Section 1125(d)(1)(A)(i) is, at most, the latter, but in no event, the former.

While courts have debated whether the ACPA's bad faith requirement applies at all to the statute's *in rem* actions,[23] no court has held that a showing of bad faith is or could be a jurisdictional requirement. This is so as a matter of definition and settled legal doctrine.[24] A court's jurisdic-

---

**22.** This does not preclude that in other contexts, domain names may be properly construed as contract rights, rather than as personal property. *See Network Solutions, Inc. v. Umbro Intern., Inc.,* 259 Va. 759, 529 S.E.2d 80, 86 (2000); *see also Dorer v. Arel,* 60 F.Supp.2d 558, 559–61 (E.D.Va.1999) (suggesting, though not resolving, that domain names are properly construed as contract rights in the context of a writ of *fieri facias* under Virginia law).

**23.** Although the element of bad faith is discussed *solely* in the *in personam* section of the

ACPA, some courts have held that bad faith is a substantive element of an ACPA *in rem* action. *See Hartog & Co. AS v. SWIX.com,* 136 F.Supp.2d 531, 539 (E.D.Va.2001); *Harrods Ltd. v. Sixty Internet Domain Names,* 110 F.Supp.2d 420, 423–24 (E.D.Va.2000); *BroadBridge Media, L.L.C. v. Hypercd.com,* 106 F.Supp.2d 505, 511 (S.D.N.Y.2000).

**24.** Maya mistakenly relies on *Harrods Ltd. v. Sixty Internet Domain Names,* 110 F.Supp.2d 420 (E.D.Va.2000) and *BroadBridge Media, L.L.C. v. Hypercd.com,* 106 F.Supp.2d 505 (S.D.N.Y.2000) in support of the proposition

tion is defined as its statutory or constitutional power to adjudicate a case. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Even assuming, *arguendo,* that bad faith is a substantive element of an ACPA *in rem* action, whether Maya's registration of cnnews.com was in bad faith has nothing to do with this Court's power to adjudicate this action. The jurisdiction of federal district courts is derived from 28 U.S.C. §§ 1331 and 1338. Section 1331 provides that federal district courts have authority to exercise "original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1338(a) provides federal district courts with original jurisdiction "of any civil action arising under any Act of Congress related to ... trademarks." These two sections, therefore, confer jurisdiction upon this Court to hear any federal cause of action related to trademarks. The case at bar—that is, plaintiff's claim of trademark infringement pursuant to the *in rem* provisions of the ACPA—manifestly qualifies as such an action. A showing of bad faith, therefore, is not a jurisdictional element of the *in rem* provisions of the ACPA.

Further, because bad faith is not a jurisdictional requirement, plaintiff's claim may

be dismissed for lack of subject matter jurisdiction only if the claim "is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.,* 523 U.S. at 89, 118 S.Ct. 1003 (citations omitted). This stringent standard is not met here; plaintiff's amended complaint presents a plausible trademark infringement claim under the ACPA.

## V.

■ Maya argues, implausibly, that this action should be dismissed, for failure to name it as an indispensable party, as allegedly required by Rule 19(b), Fed.R.Civ.P. Yet, no authority supports the proposition that Rule 19 applies to actions brought *in rem.*[25] The absence of such authority is hardly surprising because any requirement that the domain name registrant must be joined in an *in rem* action under the ACPA would defeat the purpose of the statute's *in rem* provisions. Section 1125(d)(2)(A)(ii) makes clear that *in rem* actions may be brought under the ACPA only if *in personam* jurisdiction over the domain name registrant does not exist. But if *in personam* jurisdiction over the registrant does not exist, then the registrant *cannot* constitutionally be joined as a necessary party. Thus, Maya's contention, if accepted, would require dismissal of all

that bad faith is a jurisdictional requirement of an ACPA *in rem* action. Neither case stands for this proposition. Although the court in *Harrods* did hold that bad faith indeed was an element of an *in rem* action, it *did not* hold that it was a jurisdictional element of such an action. *See Harrods,* 110 F.Supp.2d 420. Similarly, *BroadBridge Media* neither considers nor decides that bad faith is a jurisdictional requirement of an ACPA action. *See BroadBridge Media,* 106 F.Supp.2d 505.

**25.** Federal courts have consistently rejected Maya's argument in the context of other *in rem* actions. For example, in the context of *in rem* actions brought in admiralty, two courts have held that the owner of a vessel is not a necessary party to an *in rem* suit against a vessel. *See All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu,* 7 F.3d 1427, 1431 (9th Cir.1993) (holding that "[t]he owner of a vessel is an interested party, but not a necessary one" in an *in rem* proceeding against a vessel); *Merchants Nat'l Bank of Mobile v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1346 (5th Cir.1981) (same).

ACPA *in rem* actions for failure to join an indispensable party. No authority supports such a nonsensical result. In sum, in a case that meets the ACPA's requirements for an *in rem* action, the registrant of an allegedly infringing domain name is not an indispensable party for Rule 19 joinder purposes.

## VI.

Finally, Rule 4(n), Fed.R.Civ.P., describes the proper manner for providing notice to potential litigants of an ACPA *in rem* action. The Rule provides that "[i]f a statute of the United States so provides, the court may assert jurisdiction over property. Notice to claimants of the property shall then be sent in the manner provided by the statute. . . ." Rule 4(n)(1), FedR.Civ.P.

Service of process under the *in rem* provision of the ACPA is governed by 15 U.S.C. § 1125(d)(2)(B), which provides that "the actions under subparagraph (A)(ii) shall constitute service of process." Subparagraph (A)(ii) imposes two requirements for proper service of process:

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; *and*

(bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A)(ii) (emphasis added).[26] Although there is some disagreement regarding whether the language "may direct" found in Subparagraph (A)(ii)(bb) makes publication mandatory or confers on courts the discretion to decide whether publication is warranted,[27] this point need not be addressed here. Indeed, plaintiff's motion to waive service by publication was specifically denied. *See Cable News Network L.P., L.L.L.P. v. Cnnews. com,* Civil Action No. 00–2022–A (E.D.Va. Jan. 29, 2001) (order). Plaintiff was therefore. required to conform to the service requirements of Subparagraphs (A)(ii)(aa) and (A)(ii)(bb) and the record confirms that it did so by sending at least two notices of this *in rem* action via FedEx and e-mail to the WHOIS address that Maya had provided to its registrar, Eastcom. While Maya claims that it did not receive such correspondence, the statute makes clear that proof of receipt is not required. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(aa).

Plaintiff also has met the publication requirement of Subparagraph (A)(ii)(bb). Indeed, plaintiff completed service by publication, in compliance with the Court's order, by causing notice to be published in the appropriate international newspapers. *See Cable News Network L.P., L.L.L.P. v. Cnnews.com,* Civil Action No. 00–2022–A (E.D.Va. Feb. 27, 2001) (order). Thus, plaintiff has properly perfected service under the ACPA.

**26.** *Cf. Heathmount,* 106 F.Supp.2d 860, 865–66 (mistakenly holding that Section 1125(d)(2)(A) *et seq.* does *not* set forth a procedure for service of process and therefore service of process procedure in ACPA *in rem* actions should be governed by Rule 4, Fed. R.Civ.P.).

**27.** *See Banco Inverlat, S.A. v. www.inverlat.com,* 112 F.Supp.2d 521, 523 (E.D.Va. 2000) (holding that the language "may direct"

in Section 1125(d)(2)(A)(ii)(bb) means that "the publication requirement is within a court's discretion" where a party has actual notice that an *in rem* action has been filed). *Cf. Shri Ram Mission v. Sahajmarg.org,* 139 F.Supp.2d 721 (E.D.Va.2001) (holding that publication is *always* required for service of process in *in rem* actions brought under the ACPA).

## VII.

For all of these reasons, Maya's motion to dismiss must be denied.

An appropriate order has issued.